```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA
```

**MARTIN WIMBERLY**                                     **CIVIL ACTION**

**VERSUS**                                              **NO. 14-1208**

**HARVEY GULF INTERNATIONAL**                           **SECTION "B"(5)**
**MARINE, LLC**

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 by Harvey Gulf International Marine, LLC. ("Harvey Gulf").[1] Plaintiff filed a response in opposition.[2] Defendant then filed a reply in further support of the Motion for Partial Summary Judgment, to which the Plaintiff filed a Sur-Reply in opposition.[3] Accordingly, and for the reasons enumerated below,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 is **GRANTED** in part and **DENIED** in part.

<u>**Cause of Action and Facts of Case:**</u>

This action arises under 46 U.S.C. § 30104, the Jones Act, and the General Maritime Laws.[4] Plaintiff Martin Wimberly ("Wimberly") was employed by Defendant, Harvey Gulf

---

[1] Rec. Doc. No. 24
[2] Rec. Doc. No. 25
[3] Rec. Doc. No. 27; Rec. Doc. No. 29-1
[4] Rec. Doc. No. 1 at 1.

International Marine, LLC.("Harvey Gulf"), upon Harvey Gulf's acquisition of Wimberly's former employer Abdon Callies.[5]

In order to be hired by Abdon Callais in January, 2013, Wimberly submitted to a medical questionnaire, physical examination, and physical capacity test.[6] Wimberly was required to answer all questions in the questionnaire truthfully, and failure to do so would result in termination and forfeiture of maintenance and cure as stated on the form.[7] In his medical questionnaire for Abdon Callais, Wimberly circled "N" for No when asked if he "currently ha[d] the following symptoms or have significantly in the past" for: injured back/back pain, injured neck/neck pain, back surgery/injury, recurrent neck/back pain, and Sciatica or nerve pain.[8] Wimberly then passed both the physical exam and functional capacity exam, which required him to perform various tasks lifting fifty pounds, and the physical examination.[9]

Upon purchasing Abdon Callais, Harvey Gulf hired Wimberly, and on November 19, 2013, required him to fill out a post-hire medical questionnaire.[10] In light of Abdon Callais's prior forms being aligned with Harvey Gulf's policies, the post-hire questionnaire was the only required medical documentation from

---

[5] Rec. doc. No. 24-12 at 1; Rec. Doc. No. 25-1 at 1
[6] Rec. Doc. No. 24-2 at 86; Rec. Doc. No. 25-3 at 6-7; Rec. Doc. No. 25-4
[7] Rec. Doc. No. 204-2 at 86
[8] Rec. Doc. No. 24-2 at 86
[9] Rec. Doc. No. 25-3 at 7; Rec. Doc. No. 25-2
[10] Rec. Doc. No. 25-4

Harvey Gulf.[11] Harvey Gulf's questionnaire provided that "[f]alse or incomplete answers will result in disqualification or termination [from employment.]" In the questionnaire, Wimberly marked that he had never been diagnosed with or experienced back and neck trouble.[12] However, he responded affirmatively that he experienced "frequent or occasional back pain[.]"[13] The questionnaire also required him to explain in writing if he responded "yes" to the back pain question, which he failed to do.[14]

On approximately January 2, 2014, Wimberly worked aboard the M/V HARVEY SAINT, when he suffered severe and excruciating injuries to his back, neck and other parts of his body, allegedly as a result of negligence on the part of the Defendant, its employees and/or the unseaworthiness of the vessel.[15] According to Wimberly, the injury occurred in his lower back while throwing a water-logged mooring line from the vessel to a ballast onshore to tie up the ship at a Galveston fuel dock.

On May 28, 2014, Wimberly brought this suit against Harvey Gulf.[16] Wimberly alleged claims of negligence, unseaworthiness, and maintenance and cure benefits for the injuries incurred and

---

[11] Rec. Doc. No. 24-6 at 1
[12] Rec. Doc. No. 25-4 at 3
[13] Rec. Doc. No. 25-4 at 4-5
[14] Rec. Doc. No. 25-4 at 6
[15] Rec. Doc. No. 20
[16] Rec. Doc. No. 1

3

their resulting expenses.[17] Further, he claimed compensatory damages, punitive damages, and attorney's fees for alleged failure to pay maintenance and cure benefits.[18] On March 10th, 2015, Harvey Gulf moved the Court for partial summary judgment arguing that Wimberly was unable to establish elements necessary to the claims of negligence, unseaworthiness, and failure to pay maintenance and cure benefits.[19] The Court granted in part and denied in part Harvey Gulf's motion for partial summary judgment, granting summary judgment on Wimberly's claim that Harvey Gulf failed to pay maintenance and cure benefits.[20]

On August 4th, 2015, Harvey Gulf filed the instant motion for partial summary judgment on Wimberly's claim for maintenance and cure benefits, urging that because Wimberly misrepresented his past medical history with respect to issues regarding his neck, back, and history of depression, his claims for maintenance and cure benefits should be dismissed on the basis of the *McCorpen* defense.[21] The Court now reviews the facts, contentions, and the law with respect to the Motion for Partial Summary Judgment.

---

[17] Rec. Doc. No. 1 at 2
[18] Rec. Doc. No. 1 at 2-3
[19] Rec. Doc. No. 15 at 1
[20] Rec. Doc. No. 20 at 1
[21] Rec. Doc. No. 24

4

**Law and Analysis:**

**I. Standard of Review**

Summary Judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine if a party is entitled to summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Coleman v. Dennis*, 115 F.3d 524, 533 (5th Cir. 1997). The Court will consider all the evidence but will avoid "making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 333 (5th Cir. 2007)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). To defeat summary judgment, conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence" will not suffice. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

The initial burden rests upon the moving party to inform the court of the basis for the motion and the portion of the

5

record which reflect the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 332. If the moving party meets their initial burden, the burden is then shifted to the non-moving party to offer evidence and specific facts showing that a genuine issue of material fact exists. *Celtic Marine Corp. V. James C. Justice Companies, Inc.*, 760 F.3d 477, 481 (5th Cir. 1974).

## II. Analysis

Harvey Gulf contends that because Wimberly concealed and misrepresented material medical facts pertaining to his history of back pain, neck pain, and depression, and is therefore precluded from receiving maintenance and cure benefits pursuant to *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548-49 (5th Cir. 1968).[22] A vessel owner is required by law to provide maintenance and cure for seamen aboard their vessel who are injured or fall ill. *Lewis v. Lewis & Clark Marine Inc.*, 531 U.S. 438, 441 (2001). This requirement is fulfilled by providing food, lodging, and medical services until the seaman reaches maximum recovery, as determined by a physician, from the injury or ailment incurred while the seaman was in service of the vessel. *Lewis*, 531 U.S. at 441; *see also Vella v. Ford Motor Co.*, 421 U.S. 1, 4 (1975).

---

[22] Rec. Doc. No. 24-1 at 1

The U.S. Fifth Circuit Court of Appeals in *McCorpen*, determined that an employer's obligation of maintenance and cure is eliminated if a seamen intentionally conceals or fails to disclose past illness or injury to an employer who required the seamen to submit a pre-hiring medical examination or interview. *McCorpen,* 396 F.2d at 548-49.

The U.S. Fifth Circuit set forth three elements an employer or shipowner must prove to establish a *McCorpen* defense: (1) the seaman intentionally misrepresented or concealed facts, (2) the omitted facts were material to the employer's hiring decision, (3) a causal connection between the prior injury or ailment and the present injury in the complaint. *Id*.

**Concealment**

Harvey Gulf asserts that because Wimberly (1) did not circle "Y" for yes in back pain and neck pain sections of the Abdon Callais pre-hire medical questionnaire, (2) did not check yes to the questions on back and neck trouble in the Harvey Gulf post-hire medical questionnaire, and (3) did not further explain as instructed his affirmative answer to the Harvey Gulf post-hire medical questionnaire's question about experiencing back pain, Wimberly intentionally concealed prior medical facts thereby forfeiting his right to maintenance and cure.[23]

---

[23] Rec. Doc. No. 24-1.

The Fifth Circuit in *McCorpen* held, "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id.* at 549. The intentional concealment prong of the *McCorpen* defense is an "essentially" objective inquiry where the employer "need only show that the seaman '[f]ail[ed] to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information'". *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015) (quoting *Vitovich v. Ocean Rover O.N.*, No. 94-3507, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)); *see also Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 176 (5th Cir. 2005).

Furthermore, the Fifth Circuit established in *Meche,* when an employer buys another company and re-hires the former company's employees, the new employer may rely upon the previously acquired employee medical forms because "an intervening asset sale does not automatically relieve a seaman from the consequences of his or her prior intentional concealment of material medical information." *Meche*, 777 F.3d at 246. This rule only applies when a company purchases another and retains the employees of the purchased business. *Id.*

8

Wimberly argues that because he answered yes to "[d]o you have frequent or occasional back pain?[,]" he did not conceal any prior disability and the *McCorpen* defense does not apply here.[24] Further, Wimberly argues that there is a genuine issue of material fact that he even had a prior disabling illness or injury with respect to his back and neck, because he passed Abdon Callais's functional capacity exam and physical examination, experienced only insignificant back sprains in the past that were not permanent, and worked for a year as a deckhand without incident.[25] Additionaly, Wimberly argues that this is not a *Meche* case because Harvey Gulf subjected him to their own medical questionnaire, therby not relying upon Abdon Callais's forms.

In regards to Harvey Gulf's allegation that Wimberly misrepresented his history of depression, the evidence clearly contradicts this allegation and shows full disclosure of Wimberly's bout of depression over the death of his son as reflected in his explanation contained in Harvey Gulf's medical questionnaire.[26] Thus, there is no merit to the allegation and this Court will move on to the neck and back allegations.

---

[24] Rec. Doc. No. 25.
[25] *Id.*
[26] *See* Rec. Doc. No. 25-4 at 6, Wimberly did not check "Yes" to having been diagnosed with depression in the earlier section, however he fully described the diagnosis in the explanation section when he stated "[a]fter son died diagnosed with depression[.]" thereby fully disclosing the prior medical history relating to his depression

The evidence, even viewed in a light most favorable to the non-movant, does not support Wimberly's contention that he did not have recurring back and neck injuries or chronic disability. The record reflects, in regards to his history of neck problems, Wimberly himself related to Dr. Ferguson at Bert Fish Medical Center in 2010 that he suffered from chronic neck pain due to "degenerative joint disease in his neck where he suffers from severe radiculopathy. He occasionally takes Lortab for flareups, however he has not had a flareup in awhile."[27] Though he does not complain of this issue in subsequent visits, Wimberly reported a history of severe neck pain and even nerve issues in his neck to his doctor.[28] However, he failed to make this admission to his employers.

Wimberly claims his back pain was always temporary thus did not amount to "back trouble".[29] However, reviews of Wimberly's medical records reflect that in 2010 he reported to Bert Fish, a history of chronic back problems, which he later attributed to an accidental fall from a ladder in 2007 or 2008.[30] Between 2010-2012, he complained of various back pains and was even diagnosed

---

[27] Rec. Doc. No. 24-2 at 63, Though Wimberly rightly contends that he did not complain of neck pain on that occasion (Rec. Doc. No. 25-1 at 2), his own telling of his medical history to his doctor reflects his own knowledge of his past history of neck trouble.
[28] *See* Rec. Doc. No. 24-2 at 63,66
[29] Rec. Doc. No. 25-3 at 3; Rec. doc. No. 25 at 9
[30] *See* Rec. Doc. No. 24-2 at 81, Wimberly notes the ladder fall was "at least four to five years ago"; *See* Rec. Doc. No. 24-2 at 63-84.

with a vertebral fracture.[31] In 2012, he complained of an injury incurred while repairing a car and consistent pain from that period that even warranted physical therapy, which he abandoned and did not complete.[32]

Wimberly's back problem may not have been consistently disabling, but even when viewed as a series of back strains the argument fails. A history of pulled muscles and a sore back in *Brown v. Parker Drilling Co.* amounted to "back trouble" in the eyes of the Fifth Circuit. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166. 172 (5th Cir. 2005). The defendant in *Brown* admitted his understanding that his problems with back sprains and soreness constituted "back trouble" when he stated "back trouble" was the reason behind a prior termination. *Brown*, 410 F.3d at 172-75. Here, Wimberly's admissions to his doctor in his medical history reflect well his understanding of his own chronic back "trouble[.]" Albeit, only six months after being prescribed pain killers and physical therapy for lower back pain, he failed to relate such revealing medical history in his Abdon Callais medical questionnaire.[33] Harvey Gulf does overstate the amount of visits where Wimberly complained of current back and neck pain as pointed out by Wimberly's memorandum, but there is a clear history of back and neck trouble as evidenced in the

---

[31] *See* Rec. Doc. No. 24-2 at 75,81,84,85
[32] See Rec. Doc. No. 24-2 at 75,81,84,85
[33] *See* Rec. Doc. No. 24-2 at 86

11

medical record. Therefore, there is no genuine issue of fact that Wimberly suffered an injury which which was not disclosed to Harvey Gulf and/or Abdon Callais

This Court need not conclusively determine whether this is a *Meche* case or not. The Harvey Gulf post-hire medical questionnaire affords sufficient evidence to rule upon summary judgment. Failure to truthfully answer medical questions or expound upon a condition when requested by the employer in a medical questionnaire test can forfeit a seaman's right to maintenance and cure. *See Lett v. Omega Protein, Inc.*, 487 F. App'x 839, 848-49 (5th Cir. 2012) (holding that a seaman who was treated with pain pills for neck pain two months prior to employment, intentionally concealed a disability when he was responded "no" to the question about neck pain on his medical form); *Ladnier v. REC Marine Logistics, L.L.C.*, Civ. Action No. 14-1278, 2015 WL 3824382, at *3-4 (E.D. La. June 19, 2015) (finding that a seaman intentionally concealed a disability when he answered no to having injuries to certain body parts and yes to arthritis without further explaining answers as requested when he was prior diagnosed with a shoulder impingement).

In the case at hand, Wimberly's tepid admission of frequent back pain without explanation and his denial of back and neck trouble is similar to the plaintiff in *Ladnier*'s tepid admission of arthritis absent further explanation of the shoulder

12

diagnosis or answering shoulder-related injury questions truthfully. Despite a lengthy admission to his doctor of back and neck related problems beginning in at least 2006, he declined to offer that information to Harvey Gulf or Abdon Callais in light their specific inquiries. Furthermore, by not reporting any back pain whatsoever to Abdon Callais only six months after being treated extensively for and diagnosed with a lower back strain and compression fracture, Wimberly further lends evidence of objective intent to conceal the information from Harvey Gulf. However, Wimberly stated in his deposition that he was unaware of the L1 compression fracture until discovery during the instant suit.[34] This is contradicted by the medical records from Bert Fish Medical Center that describes Wimberly's relation of the diagnosis by the ER doctor of his fracture and how the ER doctor told him it was likely an older fracture to which he noted that he had an incident where he fell from a ladder years ago which began some of his lower back issues.[35] While this Court is barred from making credibility determinations, the issue is not material in light that Wimberly still concealed his prior history of back problems from Harvey Gulf in a way that evinces objective intent to downplay and conceal his injuries. By not revealing the history of radiculopathy in his neck and history of back injuries, Wimberly

---

[34] Rec. Doc. No. 24-2 at 31
[35] Rec. Doc. No. 24-2 at 81

still meets the threshold for concealment of "back trouble" made in *Brown*.

After review of the medical records and prior precedent, there is no genuine issue of fact regarding the concealment element. Harvey Gulf has carried its burden for summary judgment on Wimberly's misrepresentations of his neck and back conditions but not his history of depression.

**Materiality**

The second prong of the *McCorpen* defense requires the defendant to show the plaintiff's misrepresentations were material to Harvey Gulf's hiring decision. *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *McCorpen*, 396 F.2d at 547).

In the case at hand, the Defendant clearly established this element. Harvey Gulf and Abdon Callais asked a specific medical question about applicants' history of injury to the back and neck, which, as reflected in declarations from Abdon Callais and Harvey Gulf employees, is directly related to the duties required of a deckhand.[36] *See Brown*, 410 F.3d at 175 (holding that materiality exists where employer asks specific medical questions related to physical ability to perform job duties). Moreover, both unsworn declarations from the Human Resources Manager at Abdon Callais and Executive Vice President at Harvey

---

[36] Rec. Doc. No. 24-6 at 2; Rec. Doc. No. 24-5 at 2

Gulf stated that they would have further inquired about his medical history before hiring Wimberly if he had disclosed more information about his back and neck problems.[37]

Wimberly does not contest the materiality of the questions, however he argues that Harvey Gulf ignored that Wimberly worked for Abdon Callais for a year without incident and that he passed Abdon Callais's physical examination and physical capabilities test.[38] In *Brown*, the Fifth Circuit deemed the same argument irrelevant where the plaintiff claimed materiality did not exist because he worked the first few months of his job without incident. *Brown*, 410 F.3d at 175. The fact that Wimberly worked under Abdon Callais and Harvey Gulf for a year before the accident and passed a physical capability test is irrelevant because similar to the defendant in *Brown*, Harvey Gulf based its hiring decision in part upon whether applicants experienced prior back and neck trouble, not their ability to "on the date of their application, complete difficult manual labor tasks." *See id.* Therefore, there is no genuine issue of material fact as to whether the questions posed to Wimberly inquiring about his prior medical history were material.

**Causal Connection**

Harvey Gulf argues that a causal connection exists between Wimberly's prior injuries and present injuries because the

---

[37] *Id.*
[38] Rec. Doc. No. 25-1 at 1-3

injuries both occurred in his back and neck. In order to establish a *McCorpen* defense, the defense must demonstrate that "a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. The Fifth Circuit has held that the present injury need not be "identical" to the previous injury, nor must the previous injury be the "sole cause" to establish a causal relationship. *Brown*, 410 F.3d at 176; *Johnson v. Cenac Towing*, 599 F. Supp. 2d 721, 728-29 (E.D. La. March 2, 2009) ("a successful *McCorpen* defendant need not submit any proof that the plaintiff's omission cause the injury. Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part").

Moreover, the link between prior and present injuries does not necessarily need to occur to the exact same vertebrae or tissue but rather in the same location on the body. *See Brown*, 410 F.3d at 176-77 (holding that causality existed where plaintiff's prior injury was a lumbar strain which sent him to the ER and present injury was a herniated disc in the lumbar region of the spine); *Kathryn Rae Towing, Inc. v. Buras,* Civ. Action No. 11-2936, 2013 WL 85210, at *7 (E.D. La. Jan. 7, 2013) (finding a causal link on summary judgment when "[w]hile the precise lumbar vertebrae injured may not [have been] identical to Buras's previous diagnoses, Buras's complaints as Dr.

16

Shamsnia admitted were quite similar."); *Weatherford v. Nabors Offshore Corp.*, Civ. Action No. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004) (granting summary judgment upon finding causality where plaintiff concealed prior injury to lower back and instant injury claim included pain in the lower back).

The record reflects that Wimberly's present back injury consists of "moderate degenerative disc disease and spondylosis at the L4-5 and L5-S1 levels with central annular tear at both levels . . . [and] chronic-appearing moderate T12 compression frature[,]" in addition, an MRI showed "annular tear with disc pathology at two levels, including L5/S1[.]"[39] Prior to this injury, Wimberly has the following history of back problems: back sprain[40] in 2006 stemming from a fall off a ladder[41], report historic chronic back pain in September 2010 and December 2010[42], complaints of lower back pain in January of 2012[43], symptoms of back pain in May of 2012[44], and, a December 2011 ER trip and June 2012 doctor's visit for lower back pain where he was diagnosed with an L1 vertebral body wedge compression fracture of unknown

---

[39] Rec. Doc. No. 24-9 at 5, "3/2014 MRI lumbar spine"; Rec. Doc. No. 24-8 at 12, dated April 16, 2014

[41] Rec. Doc. No. 24-2 at 8, "Deposition of Martin Wimberly"
[42] Rec. Doc. 24-2 at 64, "Bert Fish Medical Center. . . REVIEW OF SYSTEMS" dated September 27, 2010; Rec. Doc. No. 24-2 at 66, "Bert Fish Medical Center. . . REVIEW OF SYSTEMS", dated December 10, 2010
[43] Rec. Doc. 24-2 at 69, "Bert Fish Medical Center. . . Chief Complaint: Back Pain", dated January 3, 2012; Rec. Doc. No. 24-2, "Bert Fish Medical Center. . . Primary Impression: Back Pain", dated January 12, 2012.
[44] Rec. Doc. No. 24-2 at 75 "Bert Fish Medical Center . . . Musculoskeletal Symptoms Back Pain", dated May 12, 2012.

age[45] and low back sprain after an incident where "bending over, he felt a pop"[46]

Wimberly contends that the prior issues with his back were primarily back strains and were not serious therefore not causally related to his current disc problems.[47] While the compression fracture and the reports of back strains are not "identical" to Wimberly's current disc injury, the location of his past issues of back pain and injuries coincide the previous injuries to the lower back area.[48] The prior compression fracture and muscle sprains need not be the sole cause of the disc herniation to establish the causal link. *See Brown*, 410 at 176. A causal relationship exists when the prior injury is located on the same body part as the present injury. *See Brown*, 410 F.3d at 176; *Spencer v. Hercules Offshore Inc.*, Civ. Action No. 13-4706, 2014 WL 1612440, at *4 (E.D. La. April 22, 2014).

In *Brown*, a seaman argued that causality was not present where his prior injury was a lumbar strain and current injury was a herniated disc in the same area; however, the Fifth Circuit found no merit in his argument and held that because both injuries were to the same area of the lumbar spine,

---

[46] Rec. Doc. No. 24-2 at 75, "Bert Fish Medical Center. . . HISTORY OF PRESENT ILLNESS", dated June 24, 2012; Rec. Doc. No. 24-4
[47] *See* Rec. Doc. No. 24-2 at 75,81.
[48] *See* Rec. Doc. No. 24-2 at 75-79, Rec. Doc. No. 24-4, Rec. Doc. 24-9 at 5, Present T12 compression fracture is vertebrae directly adjacent to prior L1 fracture, L4-5 and L5-S1 disc issues are both located in lower back; Rec. Doc. No 24-8 at 8, Present disc indents at L1 is on the same L1 vertebrae that was fractured

causality existed. *Brown*, 410 F.3d at 176. Similarly, Wimberly's prior symptoms and diagnosis of back sprain, compression fracture, and mild multilevel spondylosis[49] were all located in the lumbar area which is the same area as the current herniated disc.[50] Furthermore, Wimberly's history of neck pain is not only located in the same area as his present disc injuries in his neck, but is related in the type of pain and areas of the neck affected.[51] This is reflected in his own complaint to Dr. Ferguson at Bert Fish Medical when he reported a history of degenerative joint disease and severe radiculopathy in his neck.[52]

Wimberly does not offer evidence to show a genuine issue of the facts concerning the lumbar location of the prior injuries or the prior injuries and issues in his neck. Therefore, Harvey Gulf has carried their burden to show there is no genuine issue of material fact and to satisfy summary judgment in regards to the causality element of the *McCorpen* defense.

## Conclusion

After review of the facts, record, and relevant law **IT IS ORDERD** that the Defendant's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 is **GRANTED** in part as to maintenance and cure for Plaintiff's back and neck claims and

---

[50] Rec. Doc. No. 25-5 at 15; Rec. Doc. No. 24-2 at 76
[51] *See* Rec. Doc. No. 24-8 at 16; *See* Rec. Doc. No. 24-2 at 63
[52] *See* Rec. Doc. No. 24-2 at 63

19

**DENIED** in part as to maintenance and cure for Plaintiff's depression claim.

New Orleans, Louisiana, this 27th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE